***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Houser with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act. *Page 2 
2. On all relevant dates, an employer-employee relationship existed between plaintiff-employee and defendant-employer.
3. Defendant-employer is self-insured and correctly named above.
4. Plaintiff's average weekly wage will be determined from an Industrial Commission Form 22 Wage Chart to be provided by defendant with supporting wage documentation.
5. Plaintiff sustained an injury on or about January 24, 2002.
6. The injury arose out of and in the course of employment and is compensable.
7. At and subsequent to the hearing, the parties submitted the following:
 a. A Packet of Medical Records, which was admitted into the record, and marked as Stipulated Exhibit (2);
 b. A Packet of Industrial Commission Forms, which was admitted into the record, and marked as Stipulated Exhibit (3), and;
 c. Defendant's Discovery Responses, which were admitted into the record, and collectively marked as Stipulated Exhibit (4).
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, plaintiff was 41 years old. Plaintiff graduated high school and took some courses at Bladen Community College. Plaintiff's employment history consists primarily of landscaping and agricultural work. *Page 3 
2. Plaintiff was hired by defendant to work in its landscaping department. In that capacity, plaintiff's duties included planting grass and flowers, spraying chemicals and mulching. On January 24, 2002, plaintiff was a passenger in one of defendant's vehicles when it rear-ended another of defendant's vehicles.
3. Plaintiff's Industrial Commission Form 18 was filed on June 11, 2002. At the hearing, Ms. Joyce Wilson, the Workers' Compensation Administrator for defendant, testified that no Form 60 was filed because it was her understanding that a Form 60 was only filed when an employee missed more than seven days from work and plaintiff had only missed two workdays. To date, defendant has not filed a Form 60, 63, or 61. However, as noted in the Stipulations above, defendant agrees that plaintiff sustained a compensable injury on January 24, 2002.
4. Subsequent to the accident, plaintiff was transported from the scene by an ambulance to Pender Memorial Hospital. At that facility, plaintiff reported experiencing pain on the left side of her neck, as well as right breast and facial pain. X-rays taken of plaintiff's chest and cervical spine revealed degenerative disc changes at the C5-C6 level, with no acute cervical injury. Thereafter, plaintiff was released from the hospital.
5. On January 25, 2002, plaintiff sought additional treatment from Dr. Glenn Weckel, a chiropractor. On that date, plaintiff reported neck, right shoulder and left hip pain along with headaches. Following an examination, Dr. Weckel began a chiropractic treatment regime.
6. Plaintiff was referred by defendant to Dr. Alan Tamadon of Rehabilitation Medicine Services, P.C. On February 1, 2002, plaintiff reported to Dr. Tamadon that she was experiencing chest, right breast, neck, and low back pain. Dr. Tamadon diagnosed plaintiff as *Page 4 
having a contusion of the chest, a cervical strain, and a lumbar strain as the result of her January 24, 2002 accident. Following another examination on February 4, 2002, Dr. Tamadon released plaintiff to return to light duty office type work and recommended that plaintiff continue treating with Dr. Weckel.
6. On March 18, 2002, Dr. Tamadon recommended cervical and lumbar MRIs. On March 22, 2002, plaintiff returned to Dr. Tamadon who interpreted the results of plaintiff's MRIs as showing no evidence of a disc herniation. On April 2, 2002, plaintiff again returned to Dr. Tamadon and reported ongoing neck and low back pain. With these ongoing symptoms, Dr. Tamadon referred plaintiff for an orthopaedic evaluation.
7. Plaintiff was examined by Dr. Douglas Messina on April 9, 2002. Plaintiff chose to see Dr. Messina because he had previously treated her husband and son. To Dr. Messina, plaintiff reported experiencing back and right leg pain. Dr. Messina requested that an MRI be performed of plaintiff's right hip to rule out intra-articular injury. Defendant, however, authorized and referred plaintiff to Dr. Mark Foster with Wilmington Orthopaedics. Dr. Foster initially examined plaintiff on April 29, 2002 and diagnosed her as having low back pain for which he recommended physical therapy.
8. Plaintiff returned to Dr. Tamadon on May 28, 2002 at which time she reported having completed physical therapy. Dr. Tamadon then released plaintiff to return to work with no restrictions. On June 24, 2002, Dr. Tamadon released plaintiff from his care, opining that plaintiff was at maximum medical improvement and assigning a zero percent (0%) permanent partial disability rating. However, plaintiff contends that she informed Dr. Tamadon at that time that she was still experiencing pain in her neck and back. Defendants did not authorize further medical treatment for plaintiff following Dr. Tamadon's release. *Page 5 
9. During plaintiff's medical treatment, plaintiff continued working for defendant, first in a light duty capacity, then at regular duty capacity once Dr. Tamadon released her to full-duty work in May 2002.
10. In August 2002, plaintiff was deemed to have resigned her position with defendant under the State Personnel Act when she did not report for duty for several days due to an illness unrelated to the workers' compensation injury. Plaintiff testified that she was not sent a warning letter stating that she needed to return to work or she would be terminated.
11. Following the termination of her employment with defendant, plaintiff found work at Squire's Rocking Chair Factory in August 2002. Plaintiff's job was to assemble the seats of chairs. The job required constant standing on a concrete floor, which plaintiff asserts aggravated her pain symptoms. On the first day of her employment at Squire's Rocking Chair Factory, plaintiff sustained a workers' compensation injury when her shirt was caught in a sander. As a result of this incident, plaintiff sustained burn injuries to her arm and abdomen. Thereafter, plaintiff returned to work for a few days but ceased working due to the aggravation of her pain symptoms. Plaintiff also attended training for a job at an airport, but was not hired.
12. According to plaintiff, the stress from her ongoing pain and financial difficulties caused her to seek medical attention from her family nurse practitioner, Mr. Garland Williams for depression. On December 26, 2002, Mr. Williams prescribed Lexipro for plaintiff's depression.
13. On March 4, 2003, plaintiff returned to Dr. Messina and reported pain in her right shoulder, which she attributed to the January 2002 accident. For her symptoms, Dr. Messina injected plaintiff's shoulder with lidocaine, Marcaine and Depo-Medrol and prescribed physical therapy. Plaintiff returned to Dr. Messina on July 29, 2003 and reported experiencing pain in her *Page 6 
right shoulder, low back, right hip and leg. Dr. Messina referred plaintiff to Dr. Patrick Curlee for an evaluation of her back and neck pain.
14. Plaintiff was never taken out of work by Dr. Messina.
15. On September 2, 2003, plaintiff was admitted to Cherry Hospital and diagnosed with major depressive disorder, severe, recurrent, with psychotic symptoms by Dr. Venkata R. Chittilla. Plaintiff was treated with Risperdal and Lexapro. She was discharged on September 5, 2003 and referred to Bladen County Mental Health Center for outpatient treatment.
16. Dr. Curlee first examined plaintiff on September 19, 2003 at which time he also reviewed the MRI taken in March 2002. Following his examination, Dr. Curlee opined that plaintiff had a herniated disc at the C5-C6 level. To confirm his diagnosis, Dr. Curlee requested a repeat cervical MRI which was performed on October 1, 2003. Plaintiff returned to Dr. Curlee on October 9, 2003 at which time Dr. Curlee informed her that the MRI results confirmed his diagnosis of a herniated disc at the C5-C6 level. Dr. Curlee took plaintiff out of work for a six-week period in December 2003. Dr. Curlee recommended surgery, however, plaintiff has been financially unable to undergo the surgery.
17. Plaintiff continued treating with Dr. Curlee until March 24, 2004. Dr. Curlee left his practice in June 2004 and referred plaintiff to Atlantic Neurosurgical and Spine Specialists, P.A. Dr. Alsina first examined plaintiff in August 2004 and opined that he would be hesitant to offer surgery in light of plaintiff's depression. Dr. Alsina advised plaintiff to attempt to resume care for her depression.
18. On the issue of causation and plaintiff's depression, neither Dr. Curlee nor Dr. Messina provided an opinion on the issue. Mr. Williams has testified that he thinks plaintiff's chronic pain could have caused her depression. During his deposition, Dr. Chittilla answered *Page 7 
affirmatively when asked whether it was accurate that he did not have an opinion regarding the cause of plaintiff's depression.
19. There is insufficient evidence of record upon which to find that plaintiff's depression is the direct and natural result of or causally related to her January 24, 2002 injury by accident.
20. Regarding plaintiff's pain in her neck, hip, shoulder, and low back and her herniated disc, Dr. Messina has testified that neck pain can simulate shoulder pain and vice versa, indicating that it was possible for plaintiff to have been describing only shoulder pain when she was actually experiencing neck and shoulder pain. When asked if plaintiff's shoulder complaints were related to the January 24, 2002 accident, Dr. Messina replied, "I can only be as certain as her history relates, the fact that she says she had pain after the accident." Dr. Messina also testified that while he opined that plaintiff had some shoulder pathology he could not distinguish exactly the primary pathology between her neck pain and her shoulder pain. Dr. Curlee testified that the surgery recommended for plaintiff's herniated disc would effect a cure, give relief, or lessen her period of disability. However, Dr. Curlee did not give an opinion as to the causal relationship between plaintiff's January 24, 2002 injury by accident and the condition for which he recommended surgery.
21. There is insufficient evidence of record upon which to find that plaintiff's cervical disc herniation, hip, low back and continued right shoulder pain are the direct and natural result of or causally related to her January 24, 2002 injury by accident.
22. The evidence fails to establish that Plaintiff was disabled for seven or more days as a direct consequence of the January 24, 2002 injury by accident.
 *********** *Page 8 
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On January 24, 2002, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant. N.C. Gen. Stat. § 97-2(6).
2. There is insufficient evidence of record upon which to conclude that plaintiff's depression or her cervical disc herniation, hip, low back and continued right shoulder pain are the direct and natural result of or causally related to her January 24, 2002 injury by accident. N.C. Gen. Stat. § 97-2(6). See Young v. Hickory Business Furniture,353 N.C. 227, 538 S.E.3d 912 (2000); See, also, Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003).
3. Because plaintiff's current conditions are not causally related to her January 24, 2002 injury by accident, she is not entitled to indemnity or further medical compensation. N.C. Gen. Stat. § § 97-2(9);97-25.
4. In that defendant failed to file a Form 60, 63, or 61, defendant did not comply with the Workers' Compensation Act or Industrial Commission rules and is subject to sanctions. N.C. Gen. Stat. § 97-18; Industrial Commission Rules 103 and 802.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Under the law, plaintiff's claim for additional benefits must be, and is HEREBY DENIED.
2. Pursuant to Rule 802, defendant shall pay sanctions in the amount of $250.00 to *Page 9 
the Industrial Commission.
2. Each side shall pay its own costs.
This the 30th day of January 2007.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER